UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

GLENFORD W., :
    Plaintiff, :
     :
    v. : C.A. No. 18-128JJM
     :
NANCY A. BERRYHILL, ACTING :
COMMISSIONER OF SOCIAL SECURITY, :
    Defendant. :

## REPORT AND RECOMMENDATION

PATRICIA A. SULLIVAN, United States Magistrate Judge.

    Plaintiff Glenford W. served in the United States Army, including active duty in Afghanistan, from 2010 through 2013. Since ending his deployment, he has suffered from service-related post-traumatic stress disorder, with depression and anxiety, and diffuse body pain that has been diagnosed as fibromyalgia. Although he has been deemed disabled by the Department of Veterans Affairs ("VA"), his third application for Disability Insurance Benefits ("DIB") under 42 U.S.C. § 405(g) of the Social Security Act (the "Act") was denied based on the decision of an Administrative Law Judge ("ALJ"), who accepted his impairments but found that he retained the RFC[1] to perform simple light work in a stable environment with limited interactions with others. Before the Court is Plaintiff's motion to reverse the Commissioner's decision. Plaintiff contends that the ALJ erred in affording minimal weight to one VA treating source opinion, to the examining/file review opinions of two other VA sources, and to the examining opinions of a family practitioner, which were presented in support of his VA disability claim. Plaintiff also challenges the ALJ's evaluation of the limiting effects of

---

[1] Residual functional capacity is "the most you can still do despite your limitations," taking into account "[y]our impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what you can do in a work setting." 20 C.F.R. § 404.1545(a)(1).

fibromyalgia. Defendant Nancy A. Berryhill ("Defendant") has filed a motion for an order affirming the Commissioner's decision.

The matter has been referred to me for preliminary review, findings and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Having reviewed the entire record, I find that error tainted the ALJ's reasons for affording minimal weight to the findings of the primary care treating physician, Dr. Raymond Lee, and to those of the VA examining/file reviewing psychologists, Dr. Rebecca Papas and Dr. William Haddad, but I also find that these errors are harmless. By contrast, I find no error in the ALJ's decision to discount the seriously flawed opinions of the non-VA examiner, Dr. Dawn Moten. With respect to fibromyalgia, I find that the ALJ appropriately followed the First Circuit's guidance in Johnson v. Astrue, 597 F.3d. 409, 412 (1st Cir. 2009), and that his assessment of the intensity and severity of Plaintiff's fibromyalgia symptoms is well supported by substantial evidence. Based on these findings, I recommend that Plaintiff's Motion to Reverse the Decision of the Commissioner (ECF No. 8) be DENIED and Defendant's Motion for an Order Affirming the Decision of the Commissioner (ECF No. 10) be GRANTED.

## I. Background

### A. Plaintiff's History

After serving a one-year-long deployment in Afghanistan, Plaintiff, a "younger" person in the parlance of the Act, ended active duty in the Army in 2013, and joined the New York National Guard as an infantry team leader. Tr. 43, 55, 397. He continued serving until he was medically discharged in January 2017. Tr. 299. The record is unclear regarding what activities the National Guard position required, except that the file includes references to traveling to New York for training in June 2016. Tr. 440; see Tr. 492 (as of March 2016, "[h]e is in active guard

2

service and going to school"). Plaintiff's only other post-Army work was a summer job as a camp counselor in 2014. Tr. 43-44. In the early years following his Army discharge, Plaintiff was diagnosed with post-traumatic stress disorder ("PTSD"); he also complained of hand, knee, spine and hip issues linked to strains that occurred during 2012 and 2013 while in service. Tr. 255, 1594. During 2016, Plaintiff went through the stress of a divorce and was awarded 50% custody of his two-year-old daughter, at the same time that he was a full-time college student. Tr. 41-42, 725. Also in 2015/2016, Plaintiff was diagnosed with fibromyalgia based on diffuse body pain and other diagnostic criteria. Tr. 1105. Plaintiff received treatment from the VA for all of his mental and physical symptoms.

By the time of the ALJ's hearing in September 2017, Plaintiff was caring for his daughter three days a week, sometimes longer if his ex-wife was away, Tr. 742, and attending college full time. He had completed the sophomore year, mostly through on-line courses; he was studying business and doing well. Tr. 41-42, 491; see Tr. 45 ("I'm probably like a B student."). As Plaintiff told the ALJ, "I like school. It keeps me busy," Tr. 46; Plaintiff also testified that he had no difficulty caring for his toddler, watching movies with her and taking her to a nearby park. Tr. 48. The record reflects that Plaintiff ran a 5k with his daughter in 2016, and "had a good time and hope to get out and do more things like that." Tr. 441. In late November 2016, shortly before the period in issue, Plaintiff reported to treating sources that he was walking more and doing slow jogs. Tr. 652. Plaintiff drives independently, shops for food and children's items, handles his own finances, and goes to church. Tr. 315, 316.

### B. Procedural History

Plaintiff's first DIB application was filed on August 6, 2015; it was denied on reconsideration on October 5, 2015. His second DIB application was filed on June 8, 2016; it

alleged onset as of August 29, 2014, and was denied on reconsideration on January 5, 2017.  See Tr. 17 n.1.  The current DIB application was filed on January 9, 2017, alleging onset as of the day immediately following the prior denial determination (January 6, 2017).  Plaintiff's date last insured is December 31, 2021.

During the administrative phase, Plaintiff asked that the earlier applications be reopened; this request was pressed during the ALJ's hearing.  Tr. 40, 63-64.  Reopening was denied by the ALJ because he did "not find that the evidence shows facts that would have resulted in a different conclusion as to eligibility than originally reached had the evidence been introduced or available at the time of the prior determinations." Tr. 17 n.1.  Nevertheless, the ALJ considered the entire medical record consistent with 20 C.F.R. § 404.1512(b).  In his motion to this Court, Plaintiff does not argue that the ALJ's refusal to reopen is error; rather, he asks only that a remand order based on the errors as to which he presented arguments should include the directive that the Commissioner reconsider whether Plaintiff's prior applications should be reopened.  Accordingly, this report and recommendation does not separately address the issue of reopening, deeming it waived.

**C.     Medical History During Period in Issue**

During the period in issue – from January 6, 2017, until the date of the ALJ's decision on October 17, 2017 – Plaintiff sought and received almost no medical treatment.

At the beginning of the period, on January 27, 2017, Plaintiff saw his primary care physician, Dr. Raymond Lee, who had signed an opinion ten days prior confirming the diagnosis of fibromyalgia based on diffuse pain, stiffness, fatigue, sleep disturbances, depression and anxiety and irritable bowel symptoms.  Tr. 1097.  At the January 27, 2017, appointment, Dr. Lee focused on the dosage of Plaintiff's medication, which was causing fatigue, at the same time that

4

fibromyalgia symptoms were "slightly improved with cymbalta," while "anxiety/depression[] improved with cymbalta[,] . . . [n]o longer having panic attacks. Tr. 1706. On examination, Dr. Lee found muscular strength "5/5 strength throughout," with all other observations normal except for "tenderness over blt traps and upper arms," including full range of motion in the cervical spine. Tr. 1705.

In February 2017, Plaintiff saw an ophthalmologist to whom he was referred by Dr. Lee based on Plaintiff's complaint of blurry vision. Testing yielded the finding that Plaintiff's vision was normal and the issue was caused by "mild refractive error." Tr. 1733.

On September 12, 2017, Plaintiff saw his psychiatrist, Dr. Syed Raza, whose notes reference the long ("more than 9 months") delay since Plaintiff had last been seen. Tr. 2293. Plaintiff told Dr. Raza that he was depressed and tired since running out of medication two weeks before, although he was sleeping well. Tr. 2294. On examination, Dr. Raza's findings were entirely normal; "[o]verall functioning fine." Id.

All of the treating records for the period in issue, except for those related to the last appointment with Dr. Raza, were reviewed by the SSA file-reviewing experts.

### D. Medical History Prior to Period in Issue

Plaintiff's massive medical record for the prior period, which was available both to the SSA file-reviewing experts and to the ALJ, goes back to 2013. It reflects Plaintiff's consistent PTSD diagnosis and his struggles with related depression and anxiety, particularly the symptoms of self-isolation and challenges in dealing with other people. However, by 2016, following several years of treatment, treating notes are upbeat. See, e.g., Tr. 813 (Feb. 2016: "Vet is coping very well . . . taking care of self and daughter . . . feels good about how he is handling things."); Tr. 491 (March 2016: "'I have been good,' mood is fine and anxiety is manageable . . .

5

the medication is working fine 'makes me mellow, which is good.' . . . Overall reported stable mood."); Tr. 1210 (Sept 2016: "Symptoms are stable though he has noticed increased sleep difficulties . . . patient is no longer in active treatment for PTSD."). In a note dated April 18, 2016, psychologist Dr. Jennifer Lambert appears to discourage Plaintiff's pursuit of "unemployability": "Warned of that being associated with increased depression . . . . Discussed how he may ultimately may [sic] feel stuck if it goes through . . . ." Tr. 474. By mid-way through 2016, Dr. Lee wrote that panic attacks had ended with the increased dosage of medication, while depression and anxiety had improved, despite the stressors Plaintiff faced, including "ongoing divorce proceedings, work and school." Tr. 725.

The earliest record reflecting what ultimately was diagnosed as fibromyalgia is Dr. Lee's note of September 22, 2015, indicating that Plaintiff cannot perform "strenuous physical activity including heavy lifting due to ongoing medical issues." Tr. 900. At the following appointment with Dr. Lee, the treating notes indicate that a diagnosis of fibromyalgia is "definitely a possibility" in light of Plaintiff's "generalized body pain" and that potentially related depression should be treated. Tr. 890. On examination, Dr. Lee found no tenderness in the cervical spine, mild tenderness in the thoracic and lumbar spine areas, with normal strength "throughout." Tr. 889-91. By December 2015, Plaintiff was taking Cymbalta and reported improving pain and mood. Tr. 847. In April 2016, Plaintiff's "diffuse" pain was improving with Cymbalta, while by August 2016, Dr. Lee wrote with respect to the symptom of "diffuse body pain": "Pain is infrequent, has some good days and some bad days. Overall feels pain has improved and has learned to cope with it." Tr. 725. Also in August 2016, Plaintiff had imaging done of his lumbar spine, hips, and knees; all were completely normal. Tr. 620-23.

## II. **Standard of Review**

6

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – that is, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981); Brown v. Apfel, 71 F. Supp. 2d 28, 30 (D.R.I. 1999). Once the Court concludes that the decision is supported by substantial evidence, the Commissioner must be affirmed, even if the Court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); see also Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991); Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st Cir. 1981). The determination of substantiality is based upon an evaluation of the record as a whole. Brown, 71 F. Supp. 2d at 30; see also Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177, 1180 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied). Thus, the Court's role in reviewing the Commissioner's decision is limited. Brown, 71 F. Supp. 2d at 30. The Court does not reinterpret the evidence or otherwise substitute its own judgment for that of the Commissioner. Id. at 30-31 (citing Colon v. Sec'y of Health & Human Servs., 877 F.2d 148, 153 (1st Cir. 1989)). "[T]he resolution of conflicts in the evidence is for the Commissioner, not the courts." Id. at 31 (citing Richardson v. Perales, 402 U.S. 389, 399 (1971)).

### III. Disability Determination

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in

death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 416(I); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-1511.

### A. The Five-Step Evaluation

The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. § 404.1520. First, if a claimant is working at a substantial gainful activity, the claimant is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments that significantly limit physical or mental ability to do basic work activities, then the claimant does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Appendix 1, the claimant is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent doing past relevant work, the claimant is not disabled. 20 C.F.R. § 404.1520(e)-(f). Fifth, if a claimant's impairments (considering RFC, age, education and past work) prevent doing other work that exists in the local or national economy, a finding of disabled is warranted. 20 C.F.R. § 404.1520(g). Significantly, the claimant bears the burden of proof at Steps One through Four, but the Commissioner bears the burden at Step Five. Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five step process applies to both DIB and SSI claims).

The claimant must prove the existence of a disability on or before the last day of insured status for the purposes of disability benefits. Deblois, 686 F.2d at 79; 42 U.S.C. §§ 416(i)(3), 423(a), 423(c). If a claimant becomes disabled after loss of insured status, the claim for

disability benefits must be denied despite disability. Cruz Rivera v. Sec'y of Health & Human Servs., 818 F.2d 96, 97 (1st Cir. 1986).

B. **Treating Physicians and Other Sources**

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there are good reasons to do otherwise. See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(c). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. Konuch v. Astrue, No. 11-193L, 2012 WL 5032667, at *4-5 (D.R.I. Sept. 13, 2012); 20 C.F.R. § 404.1527(c)(2). The ALJ's decision must articulate the weight given, providing "good reasons" for the determination. See Sargent v. Astrue, No. CA 11–220 ML, 2012 WL 5413132, at *7-8, 11-12 (D.R.I. Sept. 20, 2012) (where ALJ failed to point to evidence to support weight accorded treating source opinion, court will not speculate and try to glean from the record; remand so that ALJ can explicitly set forth findings). The regulations confirm that, "[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." 20 C.F.R. § 404.1527(c)(2).

C. **Evaluation of Subjective Symptoms**

When an ALJ decides to discount a claimant's subjective statements about the intensity and severity of symptoms, he must articulate specific and adequate reasons for doing so or the record must be obvious. See Da Rosa v. Sec'y of Health & Human Servs., 803 F.2d 24, 26 (1st Cir. 1986); Rohrberg, 26 F. Supp. 2d at 309-10. A reviewing court will not disturb a clearly articulated finding supported by substantial evidence. See Frustaglia, 829 F.2d at 195. If proof

of disability is based on subjective evidence so that the credibility determination is determinative, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)). Guidance in evaluating the claimant's statements regarding the intensity, persistence, and limiting effects of subjective symptoms is provided by SSR 16-3p, 2017 WL 4790249, at *2 (Oct. 25, 2017). It directs the ALJ to consider the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; any other relevant evidence; and whether statements about the intensity, persistence, and limiting effects of symptoms are consistent with the medical signs and laboratory findings. SSR 16-3p, 2017 WL 4790249, at *4.

## IV.     Analysis

Plaintiff's principal challenge to the ALJ's decision focuses on his treatment of four sets of opinions.

First is the opinion of a treating source, Plaintiff's VA primary care physician, Dr. Lee. Signed on January 17, 2017, this opinion simply confirms the diagnosis of fibromyalgia and its treatment with Cymbalta and states only that Plaintiff is "[l]imited by fatigue and chronic generalized pain, [u]nable to perform certain physical activities." Tr. 1097-99. Dr. Lee's September 2015 treating note is more specific; in it he wrote that Plaintiff cannot perform "strenuous physical activity including heavy lifting due to ongoing medical issues." Tr. 900. The SSA non-examining expert physician, Dr. Kahn, accepted Dr. Lee's findings, specifically taking into consideration the diffuse pain and medication Plaintiff was taking to treat it. Based

on this evidence, Dr. Kahn opined to a physical RFC assessment that included significant limitations on Plaintiff's ability to work. Tr. 84-87. The ALJ's physical RFC is based on Dr. Kahn's assessment, to which he afforded "great probative weight."[2] T. 26.

When examined in light of this background, it is clear that the ALJ was wrong in finding that Dr. Lee's opinion should be afforded "minimal weight" because it contains limitations that are unsupported by the medical evidence. See Tr. 27. Dr. Lee opined only that pain and fatigue affected the ability to perform "<u>certain</u> physical activities." Tr. 1099 (emphasis supplied); see Tr. 900 (cannot perform "strenuous physical activity including heavy lifting due to ongoing medical issues"). This opinion is entirely consistent with Dr. Lee's treating notes, which (as the ALJ correctly observes) do not reflect significant ongoing treatment but do reflect improvement with medication. It also is entirely consistent with the SSA assessments and with the ALJ's RFC. Thus, despite the ALJ's puzzlingly mistaken finding that Dr. Lee opined to severity-based limitations that are simply not in the Lee opinion, it is clear that the Lee opinion was actually afforded substantial, if not controlling weight. Therefore, I find the ALJ's erroneous "good reason" to be entirely harmless, and do not recommend remand to address it. See Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 656 (1st Cir. 2000) ("[A] remand is not essential if it will amount to no more than an empty exercise.").

---

[2] Plaintiff argues that the Court should focus on footnote 3 in the ALJ's decision and rely on it for the legal proposition that the opinions of SSA experts may be afforded, at most, "some weight." Tr. 26 n.3. This argument fails in the face of the authority cited by the ALJ, which hold that an ALJ may afford great weight to the non-examining file-reviewers and rely on them as substantial evidence to support RFC over the contrary findings of claimant's treating physician. Berrios Lopez v. Sec'y of Health & Human Servs., 951 F.2d 427, 432 (1st Cir. 1991); see Gordils v. Sec'y of Health & Human Servs., 921 F.2d 327, 328 (1st Cir. 1990) ("advisory report is entitled to some evidentiary weight, which 'will vary with the circumstances, including the nature of the illness and the information provided the expert'").

The second two opinions in issue are those of two psychologists, Dr. Haddad and Dr. Papas.[3] Both Dr. Haddad and Dr. Papas work at the VA and both performed extensive reviews of Plaintiff's file, as well as clinical examinations of Plaintiff, to assess the state of his mental health for VA disability purposes. Dr. Haddad did two such evaluations, one in 2013, Tr. 1594-1600, and one in September 2016, Tr. 1212-19; Dr. Papas' evaluation was done in April 2016, Tr. 529-37.[4] Neither provided treatment. In each evaluation, both agreed that Plaintiff suffers from PTSD. Dr. Papas assessed "mild to moderate symptoms," concluding that "the veteran's . . . psychiatric symptoms have a moderate negative impact on the veteran's occupational functioning." Tr. 536-37. Dr. Haddad's evaluation performed five months later (in September 2016) concluded that Plaintiff's mental state appeared entirely normal; he concurred with Dr. Papas' moderate findings, concluding that Plaintiff's symptoms and functioning were "within a similar range of frequency and severity . . . as last exam." Tr. 1218-19. Dr. Haddad's 2013 evaluation is similar; as he summarized Plaintiff's "level of occupational and social impairment":

> [O]ccasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks, although generally functioning satisfactorily, with normal routine behavior, self-care and conversation.

Tr. 1595. The SSA psychologists, Drs. Haggerty and Gordon, concurred with these opinions – they accepted the diagnosis of PTSD with depression and anxiety and assessed "moderate" limitations in every pertinent functional sphere. Tr. 84-85, 87-89. While the SSA experts' focus is on the treating notes of Dr. Lee and of the treating psychiatrist, Dr. Raza, there is no material difference between these treating notes and the Haddad/Papas evaluations. See Tr. 85. The ALJ

---

[3] In argument, Plaintiff vaguely posits that the ALJ's error encompasses the rejection of "Compensation and Pension examinations" ("C&P") other than those of Drs. Haddad and Papas. With no indication of which C&Ps are intended, leaving nothing for the Court to consider, this argument is deemed waived.

[4] With onset on January 6, 2017, the 2013/2016 evaluations performed by Dr. Haddad and Dr. Papas do not pertain to Plaintiff's condition in the period in issue. However, the ALJ did not mention that as a reason affecting his evaluation of them; his RFC analysis reflects careful consideration of the two from 2016. Tr. 25.

placed great probative weight on the SSA assessments, particularly those of Dr. Gordon, and relied on them for the limitations incorporated in the RFC. Tr. 26.

The problem is that the ALJ – wrongly – assumes that Drs. Haddad and Papas did not perform a file review before preparing their evaluations.[5] Based on this mistake, his decision purports to afford the evaluations minimal probative weight because they are based only on Plaintiff's "unsubstantiated subjective complaints."[6] Tr. 27. This finding is squarely contradicted by the box checked at the beginning of each evaluation report, clearly indicating that a file review was performed. Tr. 530, 1213, 1596. Yet, as with the Lee opinion, the ALJ appears to have adopted an RFC that is entirely consistent with these evaluations, at the same time that he writes that he has rejected them based on a mistake. If there were a crack of daylight between these evaluations and the SSA assessments, this mistake might require remand. However, there is not. Dr. Papas opined to "moderate" limitations in all spheres, while Dr. Haddad agreed with Dr. Papas, as do Drs. Haggerty and Gordon, who assessed "moderate" limitations in all relevant spheres. With the ALJ's wholesale adoption of the SSA experts' limitations for his RFC, Plaintiff has failed to sustain his burden of establishing that the erroneous reason given for rejecting the Haddad/Papas evaluations was material. See Shinseki v. Sanders, 556 U.S. 396, 409 (2009) ("the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination").

---

[5] The genesis of the error seems to lie in the ALJ's drafting of his decision – he conflates the Haddad/Papas evaluations with the seriously flawed evaluation prepared by Dr. Moten, which is discussed *infra*. Unlike Drs. Haddad and Papas, Dr. Moten saw no records and opined to limitations many of which are based on nothing more than subjective complaints, supplemented by a single physical examination resulting in findings that are materially different from contemporaneously treating observations.

[6] Also mistaken is the finding of inconsistency with the overall medical evidence. The notes of the treating psychiatrist (Dr. Raza) were reviewed by the SSA file reviewers, which resulted in an assessment of the same moderate limitations opined to by Drs. Haddad and Papas.

The fourth set of evaluations (of hips, hands, knees and spine) was prepared by Dr. Dawn Moten based on an examination performed on February 15, 2017. The evaluations are an entirely different matter from the Haddad/Papas opinions. Dr. Moten is a family medicine practitioner based in East Providence who completed VA "Disability Benefit Questionnaire" forms for Plaintiff in connection with his VA disability claim. She has no treating relationship with Plaintiff. As she makes clear on the forms she completed, she had no access to any of Plaintiff's medical records. E.g., Tr. 1754-55. Instead, for history and background, she relied entirely on what Plaintiff told her. For example, her notes reflect that an x-ray supports the diagnosis of a hip strain; yet, at least as far as the current record reflects, this is not true in that the VA hip x-ray done in 2016 was normal. Tr. 621-22, 1756. Plaintiff also told Dr. Moten that he could not exercise, run or walk for an extended period. Tr. 1757. Yet just three months prior, Plaintiff told a treating source that he was "walking more and doing slow jogs," while less than a year prior he ran a 5k with his daughter. Tr. 441, 652.

For many of her abnormal findings, Dr. Moten's evaluation expressly states that she was relying on Plaintiff's statements rather than on her own clinical observations. E.g., Tr. 1779, 2279 (finding regarding repetitive use based on statements, not on testing); Tr. 1769, 1782, 2280 (finding of pain "per veteran" or based on "Veteran's statements"). Further, many of her clinical tests yielded findings that are normal or near normal. E.g., Tr. 2278 (mild pain at point of back strain); Tr. 2283 (straight leg raises both negative). And many of her abnormal findings that do purport to be based on objective observation are materially different from the findings of treating and other examining sources. Compare Tr. 2262, 2281-82 (Dr. Moten records many strength measurements as 4/5), with Tr. 890 (Dr. Lee's examination note reflects "motor 5/5 throughout"), and Tr. 399 (based on functional capacity examination performed in 2016,

14

ergonomist opines that Plaintiff has "no specific **physical** limitations and presented with the ability to perform tasks at the **Medium** functional category") (emphasis in original). Also troublesome is Dr. Moten's focus on the impairments of back strain, hip strain, left hand strain and left knee strain, because, as the ALJ correctly noted, the record has no evidence of significant ongoing treatment for back strain, hip strain, left hand strain and left knee strain.[7] Tr. 20. Nevertheless, based on Plaintiff's subjective report of these impairments, Dr. Moten opined that Plaintiff cannot perform work that would require him to lift more than five pounds, to bend to pick up objects, to use his left hand in a repetitive task, to engage in repetitive use of back muscles, or to sit, stand or walk for extended periods. Tr. 1787, 2286.

In light of the foregoing, the ALJ's reasons for affording "minimal probative weight" to the Moten evaluations are well founded and appropriately based on substantial evidence.[8] First, the ALJ is right that Dr. Moten is an examiner whose assessments were based on "meeting with the claimant on isolated occasions" – in this instance, just one such meeting. Tr. 27. Second, the ALJ is right that Dr. Moten did not have access to any records, and instead relied entirely on Plaintiff's subjective report for medical history. Id. Third, the ALJ is right that, for some of her key findings resulting in "assessed functional limitations," Dr. Moten did not even do any testing, relying only on Plaintiff's subjective statements.[9] Finally, the ALJ correctly notes the

---

[7] This dearth of evidence resulted in the ALJ's unchallenged Step Two finding that these impairments are not "severe." Tr. 20. The Court's own review of every page of this massive record – consisting of 1910 pages of medical evidence and a total of 2,296 pages – confirms this conclusion. Indeed, the Court's file review turned up no evidence at all of any current treatment of muscle "strain."

[8] Because Dr. Moten is not a treating source, the ALJ was obliged only to consider her evaluations, not to give "good reasons" for the weight afforded to them. See Jessica B. v. Berryhill, No. 1:17-CV-00294-NT, 2018 WL 2552162, at *4 (D. Me. June 3, 2018), adopted, 2018 WL 4289314 (D. Me. Sept. 7, 2018) (because therapist was not a treating source, ALJ not required to give good reasons for treatment of her opinion). However, the decision does set out his reasons, making the Court's work easier.

[9] To take one example, Dr. Moten found that Plaintiff was significantly limited on the ability to perform repetitive movements with his back and left hand, yet her forms are clear that she did not perform any repetitive testing either of the hand or the spine. Tr. 1760, 1761, 1779.

inconsistency between the Moten evaluations and the "overall medical evidence," a finding that is well grounded in the substantial evidence of record.[10] In relying on these reasons, which materially undermine the foundation on which Dr. Moten based her conclusion that Plaintiff suffers from extreme functional limitations, the ALJ committed no error when he decided to credit the assessments of the SSA experts over these flawed evaluations. I do not recommend remand to reconsider them.

Plaintiff's final argument – that the ALJ did not properly apply the law governing how to analyze fibromyalgia – does not merit extensive review. The law on which Plaintiff relies is the well-established principle that fibromyalgia is a condition that is established primarily based on subjective pain, so that it is error to disregard a treating physician's diagnosis of fibromyalgia based solely on the lack of objective findings. Johnson, 597 F.3d at 412; Howcroft v. Colvin, C.A. No. 15-201S, 2016 WL 3063858, at *10 (D.R.I. Apr. 29, 2016), adopted, 2016 WL 3072254 (D.R.I. May 31, 2016). It is equally well settled that a diagnosis of fibromyalgia does not translate to a finding of disability nor does it automatically render the claimant's testimony credible. Mariano v. Colvin, No. 15-018, 2015 WL 9699657, at *11 (D.R.I. Dec. 9, 2015) (citing cases), adopted, 2016 WL 126744 (D.R.I. Jan. 11, 2016). Even with fibromyalgia, it remains true that the ALJ is the individual optimally positioned to observe and assess witness credibility, Mariano, 2015 WL 9699657, at *10, so that "[i]n critiquing the ALJ's credibility determination, this Court is mindful of the need to tread softly, because "[i]t is the responsibility of the [Commissioner] to determine issues of credibility and to draw inferences from the record

---

[10] To take one example, Dr. Moten's extreme limitation on the ability to lift (inability "to lift more than 5 lbs") clashes with Plaintiff's testimony at the ALJ's hearing: "I would probably say like if you're having consistently like me lift something for like 10 minutes, it's like 20 pounds or something, 10-15-20 pounds, yes, I'm going to be hurting later like really really bad." Tr. 56. Another example is the discrepancy between Dr. Moten's strength measurements and those of Dr. Lee, which is noted *supra*.

16

evidence." Cruz v. Astrue, C.A. No. 11-638M, 2013 WL 795063, at *16 (D.R.I. Feb. 12, 2013), adopted, 2013 WL 802986 (D.R.I. Mar. 4, 2013).

Here, despite Dr. Lee's reliance on some subjective symptoms for the diagnosis of fibromyalgia, the ALJ properly accepted the diagnosis as a severe impairment and adopted significant RFC limitations based on the assessments of the SSA experts of the debilitating effects of fibromyalgia. Nor is there any error in the ALJ's factual findings – "The claimant is also quite functional. He is in college full time and is able to care for a child. He maintains his household." Tr. 28. All are well anchored in the evidence. These findings, coupled with the ALJ's observation of Plaintiff during the hearing, resulted in the well-supported conclusion that Plaintiff's statements describing extreme limiting effects of fibromyalgia should not be credited. Id. Mindful of the deferential standard applicable to such a conclusion, id., I find no error in the ALJ's determination.

At bottom, the ALJ has made a decision that appropriately acknowledges that Plaintiff suffers from severe impairments linked to his service to his country in Afghanistan. Nevertheless, focusing on both the period under review, during which there was almost no treatment, as well as the earlier period, when treatment resulted in improvement, I find that the ALJ made a decision that is well-grounded in the substantial evidence of record and that there is no error in his conclusion that this medical record simply does not support a finding of disabling mental illness or fibromyalgia. And while the ALJ's decision articulates mistaken reasons for affording limited weight to the opinions of Drs. Lee, Haddad and Papas, I find that the error is harmless because the ALJ based his RFC on the SSA expert file reviewers whose assessments in turn were based on or consistent with every finding in the Lee/Haddad/Papas opinions.

V.      **Conclusion**

Based on the foregoing analysis, I recommend that Plaintiff's Motion to Reverse the Decision of the Commissioner (ECF No. 8) be DENIED and Defendant's Motion for an Order Affirming the Decision of the Commissioner (ECF No. 10) be GRANTED.

Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days after its service on the objecting party. See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision. See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
February 8, 2019